# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SERGANT CAULFIELD**                                    **CIVIL ACTION**

**VERSUS**                                              **NO.  14-557**

**TERRY TERRELL, ALLEN**                                **SECTION "A"(2)**
**CORRECTIONAL CENTER**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Sergant Caulfield, is a convicted inmate currently incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2] Caulfield was charged on September

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 3.

16, 2008, by bill of information in Jefferson Parish with one count of possession of a weapon by a previously convicted felon and one count of possession with intent to distribute heroin.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Since defendant pled guilty, the only facts contained in the record are those given by the State during the guilty plea colloquy, to-wit:
>> [I]f Mr. Caulfield had gone to trial, the State of Louisiana would have proven beyond a reasonable doubt that on July 27th of the year 2008, he did knowingly and intentionally possess a firearm which was a .9 millimeter weapon. And that he is one [and] the same individual who has a previous felony conviction for Attempted Second Degree Murder in Case Number: 371-260 out of Section "G [sic] of Orleans Parish Criminal District Court. That's with regard to Count One.
>> With regard to Count Two, had Mr. Caulfield gone to trial, the State of Louisiana would have proven beyond a reasonable doubt that on July 27, 2008, he did knowingly and intentionally possess a controlled dangerous substance which was in fact heroin, and he had the intent to distribute that heroin.
> Both of these incidents occurred within the Parish of Jefferson.

State v. Caulfield, 67 So.3d 600, 602-03 (La. App. 5th Cir. 2011); State Record Volume 1 of 6, Louisiana Fifth Circuit Court of Appeal Opinion, 10-KA-769, pages 3-4, May 24, 2011.

The trial court held a hearing on May 29, 2009, to consider several pretrial motions, including motions to suppress evidence filed by Caulfield and his counsel,[4]

---

[3]St. Rec. Vol. 2 of 7, Bill of Information.

[4]St. Rec. Vol. 1 of 6, Minute Entry, 5/29/09; Hearing Transcript, 5/29/09; Motion to Suppress, 12/7/08, Motion to Suppress Evidence, 5/29/09.

which the court denied after hearing evidence and arguments.[5] Caulfield's counsel sought immediate review of that ruling in the Louisiana Fifth Circuit, and the court denied the writ application on July 10, 2009, finding no error.[6] The Louisiana Supreme Court denied Caulfield's related writ application on May 7, 2010.[7]

Thereafter, on July 10, 2010, Caulfield entered guilty pleas to both counts under the provisions of State v. Crosby, 338 So.2d 584 (La. 1976), reserving his right to appeal the denial of the motions to suppress evidence.[8] The state trial court sentenced Caulfield on the first count to fifteen (15) years in prison at hard labor without benefit of parole, probation or suspension of sentence.[9] The court sentenced him on the second count to a concurrent term of twenty-five (25) years in prison at hard labor, with the first five (5) years to be served without benefit of parole, probation or suspension of sentence.

---

[5]Id.

[6]St. Rec. Vol. 1 of 6, 5th Cir. Order, 09-K-482, 7/10/09; 5th Cir. Writ Application, 09-K-482, 7/2/09.

[7]State ex rel. Caulfield v. State, 34 So.3d 858 (La.), recon. denied, 42 So.3d 386 (La. 2010); St. Rec. Vol. 3 of 6, La. S. Ct. Order, 2009-KH-1853, 5/7/10; La. S. Ct. Order, 2009-KH-1853, 8/18/10; St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 09-KH-1853, 8/13/09; Supplemental Brief, 09-KH-1853, 2/26/10; Application for Reconsideration, 09-KH-1853; 6/24/10; La. S. Ct. Letter, 2009-KH-1853, 8/13/09.

[8]St. Rec. Vol. 1 of 6, Plea Minutes, 7/20/10; Defendant's Acknowledgment of Constitutional Rights, 7/20/10; Plea Transcript, 7/20/10.

[9]Id.; St. Rec. Vol. 1 of 6, Plea Transcript, 7/20/10.

At the same hearing, the State filed a multiple offender bill charging Caulfield as a second felony offender in connection with the second count.[10] Caulfield entered a guilty plea to the charge, and the court resentenced him on count two as a multiple offender to twenty-five (25) years in prison at hard labor without benefit of probation or suspension of sentence.[11]

On direct appeal to the Louisiana Fifth Circuit, both Caulfield and his appointed counsel argued that the trial court erred in denying the pretrial motion to suppress the evidence, which the defense argued was seized during his arrest by officers without a proper warrant and outside of the officers' territorial authority.[12] Caulfield also referenced denial of the pretrial motion to suppress his statements but did not brief the issue.

The Louisiana Fifth Circuit affirmed the conviction and sentences, as amended, on May 24, 2011, and declined to reconsider its pretrial ruling on the motion to suppress the evidence under the "law of the case" doctrine.[13] The court also found that the issue of the denial of the motion to suppress the statements had been abandoned because it was

---

[10]Id.; St. Rec. Vol. 1 of 6, Multiple Bill, 7/20/10; Plea Transcript, 7/20/10.

[11]Id.; St. Rec. Vol. 1 of 6, Multiple Bill, 7/20/10; Plea Transcript, pp. 13-14, 7/20/10. This reflects the sentence as corrected by the appellate court.

[12]St. Rec. Vol. 1 of 6, Appeal Brief, 2010-KA-0769, 9/27/10; Supplemental Appeal Brief, 2010-KA-0719, 12/2/10.

[13]Caulfield, 67 So.3d at 607-08; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 10-KA-769, pp. 10-12, 5/24/11.

not briefed.  On its own review, the appellate court also found discrepancies between the sentencing transcript and the commitment order outlined in the trial court's minutes and an error in the designation of benefits under the enhanced multiple offender sentence. The appellate court amended the multiple offender sentence and remanded the matter for the lower court to correct its commitment order and minutes.  The state trial court complied by reissuing its minute entries with nunc pro tunc corrections on May 31, 2011.[14]

The Louisiana Supreme Court denied Caulfield's subsequent writ application without stated reasons on March 30, 2012.[15]  His conviction and sentence became final ninety (90) days later, on June 28, 2012, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On February 10, 2013, Caulfield submitted to the state trial court an application for post-conviction relief asserting the following grounds for relief:[16] (1) Counsel was

---

[14]St. Rec. Vol. 3 of 6, Amended Minute Entry, 5/31/11.

[15]State ex rel. Caulfield v. State, 85 So.3d 107 (La. 2012); St. Rec. Vol. 3 of 6, La. S. Ct. Order, 2011-KH-1395, 3/30/12; St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 11-KH-1395, 6/29/11 (dated 6/23/11); St. Rec. Vol. 3 of 6, La. S. Ct. Letter, 2011-KO-1395, 6/29/11 (showing postmark 6/24/11).

[16]St. Rec. Vol.  3 of 6, Uniform Application for Post-Conviction Relief, 2/14/13 (attached memorandum dated 2/10/13).

ineffective when she failed to move to suppress evidence seized pursuant to an allegedly warrantless search. (2) Counsel was ineffective when she failed to move to suppress evidence allegedly seized incidental to an unlawful stop. (3) Counsel was ineffective when she failed to move for a recess. (4) Counsel was ineffective when she failed to suppress evidence based on grounds that the warrant application contains intentional misrepresentations and omissions without which no probable cause existed. (5) Appellate counsel was ineffective for not raising the ineffective assistance of trial counsel on direct appeal.

The state trial court denied Caulfield's application on April 1, 2013, finding that the underlying suppression issues had been considered by the Louisiana Fifth Circuit in the pretrial writ application and were now procedurally barred from review under La. Code Crim. P. art. 930.4(C).[17] In addition, the court determined that Caulfield's ineffective assistance of counsel claims were without merit under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and related state case law.

The Louisiana Fifth Circuit denied Caulfield's subsequent writ application on May 24, 2013, finding no error in the trial court's denial of relief under Strickland.[18] The

---

[17]St. Rec. Vol. 3 of 6, Trial Court Order, 4/1/13.

[18]St. Rec. Vol. 3 of 6, 5th Cir. Order, 13-KH-358, 5/23/13; St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 13-KH-358, postmarked 4/24/13.

Louisiana Supreme Court also denied Caulfield's related application without stated reasons on February 14, 2014.[19]

## II.    FEDERAL HABEAS PETITION

On March 19, 2014, the clerk of this court filed Caulfield's petition for federal habeas corpus relief in which he asserts that he was denied his Sixth Amendment right to effective assistance of counsel for the following reasons:[20] (1) Counsel failed to move to suppress evidence seized pursuant to an allegedly warrantless search of his house by New Orleans Police Sergeant Samuel Palumbo. (2) Counsel failed to move to suppress evidence that was seized incidental to an allegedly unlawful stop when Caulfield was in a public area where the officers had no right to be when the alleged unlawful conduct was observed. (3) Counsel failed to move for a recess to obtain the identities of other officers who assisted Sergeant Palumbo in effecting the stop. (4) Counsel failed to move to suppress evidence seized pursuant to a warrant where the application contains intentional misrepresentations and omissions without which no probable cause existed. (5) Appellate counsel was ineffective for not raising the foregoing errors by trial counsel on direct appeal.

---

[19]State ex rel. Caulfield v. State, 132 So.3d 400 (La. 2014); St. Rec. Vol. 3 of 6, La. S. Ct. Order, 2013-KH-1392, 2/14/14; La. S. Ct. Letter, 2013-KH-1392, 6/13/13; St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 13-KH-1392, 6/13/13 (dated 6/8/13); Supplemental Brief, 13-KH-1392, 2/14/14.

[20]Rec. Doc. No. 3.

In its response in opposition to Caulfield's petition, the State concedes the timely filing of the petition and urges that the claims are procedurally barred from review, having been waived by the guilty plea.[21] Alternatively, the State argues that the denial of relief by the state courts was not contrary to or an unreasonable application of federal law and the claims are without merit. Caulfield replied to the State's opposition response re-urging the merits of his claims.[22]

## III.  GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Caulfield's petition, which, for reasons discussed below, is deemed filed in this court on March 5, 2014.[24]

---

[21]Rec. Doc. No. 10.

[22]Rec. Doc. No. 11.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[24]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that the petition was timely filed and all claims have been exhausted in the state courts. I find, however, that the State's procedural default defense is inapplicable and must be rejected.

It is settled that when, as here, a criminal defendant pleads guilty, he admits that he committed the charged offense. North Carolina v. Alford, 400 U.S. 25, 32 (1970); Taylor v. Whitley, 933 F.2d 325, 327 (5th Cir. 1991). Entry of a guilty plea waives all non-jurisdictional defects in the prior proceedings, except claims of ineffective assistance of counsel relating to the voluntariness of the guilty plea. E.g., United States v. Daughenbaugh, 549 F.3d 1010, 1012 (5th Cir. 2008); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983); Barrientos v. United States, 668 F.2d 838, 842 (5th Cir. 1982). In addition, the Louisiana Supreme Court has held that "[w]hen a defendant enters a

_____

limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Caulfield's petition was filed by the clerk of this court on March 19, 2014, when the filing fee was paid. His signature on the petition is dated March 5, 2014, which is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

counseled plea of guilty, this court will review the quality of counsel's representation in deciding whether the plea should be set aside." <u>State v. West</u>, 50 So.3d 148, 149 (La. 2010).

Caulfield argues that, but for counsel's alleged deficient performance, he would not have entered the guilty plea and would have chosen to proceed to trial on the limited evidence he believes would have been left after a successful motion to suppress. The state courts did not impose a procedural bar to Caulfield's ineffective assistance of counsel claims. Instead, the claims were addressed on the merits under the <u>Strickland</u> standards. Therefore, there is no state court imposed procedural bar of these claims for this federal court to consider.

In addition, Caulfield clearly is challenging his counsel's performance as it relates to the motion to suppress and its effect on his decision to enter the guilty plea. Under both state and federal law cited above, it does not appear that his ineffective assistance of counsel claims were waived by the guilty plea. For these reasons, the procedural default defense is rejected, and Caulfield's claims must be reviewed on the merits.

IV.     <u>STANDARDS OF MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 787 (2011), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

V.    <u>ASSISTANCE OF COUNSEL</u>

Caulfield alleges that he was denied effective assistance when his counsel failed to pursue suppression of the evidence on several grounds, including the alleged inaccuracy of the warrant and illegality of the stop and search. Caulfield contends, however, that counsel performed deficiently when she failed to urge certain arguments in support of the motion.  Caulfield raised these arguments in the state courts on post-conviction review.  Relying on the standards set forth in <u>Strickland</u>, the state trial court found the claims meritless under <u>Strickland</u>, because no prejudice could be shown where the state appellate courts had already affirmed denial of the motion to suppress. The Louisiana Fifth Circuit subsequently found that counsel's representation was neither deficient nor prejudicial under the <u>Strickland</u> standards.

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012); <u>Woodfox v. Cain</u>, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in <u>Strickland</u>, 466 U.S. at 688, in which the Supreme Court

established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Id., 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., 466 U.S. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 131 S. Ct. at 792 (Strickland requires a "substantial" likelihood of a different result, not just a "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom." <u>Harrington</u>, 131 S. Ct. at 788. The <u>Harrington</u>

Court went on to recognize the high level of deference owed to a state court's findings

under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly

deferential." <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting

<u>Knowles</u>, 556 U.S. at 123). This court must therefore apply the "strong presumption"

that counsel's strategy and defense tactics fall "within the wide range of reasonable

professional assistance." <u>Strickland</u>, 466 U.S. at 690; <u>Moore v. Johnson</u>, 194 F.3d 586,

591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless

clearly proven otherwise by the petitioner. <u>Id.</u>, 466 U.S. at 689; <u>Geiger v. Cain</u>, 540 F.3d

303, 309 (5th Cir. 2008); <u>Moore</u>, 194 F.3d at 591. In assessing counsel's performance,

a federal habeas court must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time of trial. <u>Id.</u>, 466 U.S. at 689;

Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.     TRIAL COUNSEL

Caulfield suggests three alternative bases on which counsel should have pursued the motion to suppress evidence: (a) the first warrantless search of the house without consent; (b) the unlawful stop, and (c) the falsified arrest warrant. He also complains that trial counsel failed to move to recess the hearing to obtain the names of other arresting officers.

The "omnibus" motion to suppress the evidence filed by one of Caulfield's first appointed attorneys generally alleged that the evidence had been illegally and unlawfully obtained.[25] The state trial court set this and other motions for a hearing ultimately held on May 29, 2009, when Caulfield was represented by other retained counsel. At the hearing, Caulfield filed a pro se motion to suppress the evidence in which he argued that New Orleans police officers did not have jurisdiction to arrest him in Jefferson Parish and that the search warrant on which they relied was not issued until after they were in

_____

[25]St. Rec. Vol. 1 of 6, Motion to Suppress, 12/7/08.

Jefferson Parish.[26] The court declined to consider Caulfield's pro se motion because he was represented by counsel.[27]

At the hearing, however, Caulfield's counsel pursued a similar argument when she questioned each of the officers about the arrest and the search of the house. She also argued to the court that La. Code Crim. P. art. 204 required that the arrest warrant be served by someone from Jefferson Parish, but only New Orleans police officers were present when it was executed.[28] The testimony reflects that the assigned FBI agent did not arrive until later. She specifically argued, "they had no reason to be there in the first place and no jurisdiction to serve their warrant."[29] She urged that anything occurring after their arrival was unlawful and constituted an illegal search and seizure.

The State responded at the hearing that, based on the officers' testimony, the New Orleans police officers were in Jefferson Parish to determine whether Caulfield was at that location and to interview him about the shootings they were investigating.[30] Upon their arrival, when Caulfield discarded the heroin, he was properly read his Miranda rights and arrested for that action. Based on Caulfield's voluntary statements about the narcotics and weapon in the house, Jefferson Parish deputies were contacted and obtained

---

[26]St. Rec. Vol. 1 of 6, Motion to Suppress Evidence, 5/29/09.

[27]St. Rec. Vol. 1 of 6, Hearing Transcript, p. 7, 5/29/09; Minute Entry, 5/29/09.

[28]Id., p. 39.

[29]Id.

[30]Id., pp. 39-41.

a search warrant for the house. The Jefferson Parish deputies searched the house, assisted by the New Orleans police officers. Caulfield was not arrested under the New Orleans arrest warrant or on the federal charges until later.

The trial court denied the motion to suppress the evidence and the statements, because the drug crime at issue was witnessed by the officers who made the arrest and because the FBI agent was eventually present with a federal warrant conveying jurisdiction over the area.[31]

Caulfield's counsel urged the same argument in the Louisiana Fifth Circuit that the New Orleans police officers lacked jurisdiction to serve an arrest warrant in Jefferson Parish. The court denied relief, citing La. Code Crim. P. art. 214 and State v. Jarvis, 710 So.2d 831 (La. App. 5th Cir. 1998), writ denied, 734 So.2d 1222 (La. 1999).[32] In Jarvis, the Louisiana Fifth Circuit determined that an officer outside of his territorial jurisdiction could not make a legal "arrest under warrant" unless assisted by an officer with authority in that area or the arresting officer began pursuit of the person while still in his own jurisdiction. Jarvis, 710 So.2d at 833 (quoting La. Code Crim. P. art. 207). However, the court further found that a valid citizen's arrest could be made under La. Code Crim.

---

[31] Id., p. 41.

[32] In Jarvis, just hours after an armed robbery in St. Charles Parish, Deputy Troy Becnel drove the victims from St. Charles Parish into Lafourche Parish to identify a van that may have been involved in the robbery. No one was in the van when it was located. On the return drive to St. Charles Parish, the victims saw and recognized the perpetrator, later identified as Kevin Jarvis, on the side of the road within Lafourche Parish. Deputy Becnel arrested Jarvis without a warrant and transported him back to St. Charles Parish.

P. art. 214, which states that "[a] private person may make an arrest when the person has committed a felony, whether in or out of his presence." The court resolved that Louisiana law authorizes <u>both</u> private citizens <u>and</u> police officers to make arrests without a warrant for felonies committed either in or out of their presence. <u>Jarvis</u>, 710 So.2d at 833 (citing <u>State v. Washington</u>, 444 So.2d 320 (La. App. 1st Cir. 1983) and La. Code Crim. P. arts. 213(3), 214).

The Louisiana Supreme Court denied Caulfield's related writ application without stated reasons, and the state courts declined to reconsider the denial of the motion to suppress when the issue was raised on direct appeal.

The United States Supreme Court has recognized exceptions to the warrant requirement, such as exigent circumstances or when law enforcement officers conduct a search without a warrant to prevent the imminent destruction of evidence. <u>See</u> <u>Missouri v. McNeely</u>, __ U.S. __, 133 S. Ct. 1552, 1559 (2013) (citing <u>Cupp v. Murphy</u>, 412 U.S. 291, 296 (1973) and <u>Ker v. California</u>, 374 U.S. 23, 40-41 (1963)). The Supreme Court has also held that officers do not exceed the bounds of the Fourth Amendment when they temporarily secure a location to await arrival of a warrant before effecting a more thorough search. <u>Illinois v. McArthur</u>, 531 U.S. 326, 332-33 (2001) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 28 (1968) (manner in which police act is "vital ... part of ... inquiry."); <u>Chimel v. California</u>, 395 U.S. 752 (1969) (protecting the safety of the police officers).

In addressing a concern similar to that raised by Caulfield under the Fourth Amendment, the Supreme Court held "that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." <u>Segura v. United States</u>, 468 U.S. 796, 810 (1984).  The Court concluded that the Fourth Amendment is not violated when a residence is entered and secured from within, or only secured by its outside perimeter, "to preserve the status quo while a search warrant is being sought." <u>Id</u>. at 811.  "In other words, the initial entry -- legal or not -- does not affect the reasonableness of the seizure" made after the officers obtain the valid warrant. <u>Id</u>.

The evidence at the suppression hearing reflects that New Orleans police Sergeant Palumbo and other officers entered Jefferson Parish to ascertain whether Caulfield was at his residence and to interview him about an ongoing investigation for which they did have an arrest warrant and that was not executed at the scene.  Their confirmation of his location also would allow FBI Agent Jason Quick to join them and effect an arrest warrant on other federal charges.  Before anyone addressed the New Orleans or federal investigations, Sergeant Palumbo arrived to find Caulfield on his front porch and witnessed Caulfield discard the package of heroin.  Based on his eyewitness observation, <u>not</u> the outstanding warrants, Sergeant Palumbo arrested Caulfield and seized the discarded package.

Once detained, Caulfield told the officers that his parents were inside the house where he also had a weapon and additional heroin.  As a result, Sergeant Palumbo and the other officers secured the house, including locating the other people inside where the gun was, to assure officer safety and containment of any evidence.  The officers knocked on the door and, when there was no answer, entered the unlocked door and located Caulfield's parents in the back of the house. The gun was seen sitting on a table just inside the door, but it was not seized at that time. Sergeant Palumbo notified the Jefferson Parish Sheriff's Office for assistance and to obtain a warrant.  The New Orleans police officers did not look through or seize anything in the house until the Jefferson Parish deputies arrived with a search warrant.

Based on these facts as determined by the state courts and supported by the record, counsel had no other legal basis to move for suppression of the evidence.  The seizure of the items from Caulfield's house was done with a warrant.  The officers' first entry into the home was made after Caulfield advised Sergeant Palumbo that other people, a weapon and narcotics were inside.  Once the house was secured, the search of the home and seizure of additional drugs, drug paraphernalia and the weapon occurred pursuant to the Jefferson Parish warrant.

Based on the foregoing, Caulfield's counsel had no legal basis to argue to the state trial court that the police officers conducted a warrantless search of the house without consent when they knocked and entered to secure the premises and await the warrant.

Securing the house and the evidence it contained was not unlawful. Counsel does not act deficiently in failing to urge a meritless argument. See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

Caulfield also contends that his counsel should have based the motion to suppress on the assertion that the initial stop by Sergeant Palumbo and other New Orleans officers was unlawful because they prevented his movement and effectively detained him before he discarded the heroin. He argues that he was exiting the porch of his home when the police arrived, and that the porch was a public place where the officers had no right to be and he was doing nothing wrong. He also argues, as Sergeant Palumbo testified, that the officers blocked his car and would not allow him to leave even before he threw the heroin. Thus, he concludes, the initial "stop" was based on the New Orleans arrest warrant, not the thrown heroin, and the heroin was seized incidental to that unlawful stop.

The Supreme Court has held, however, that an individual standing at the threshold of his home was "not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if [he] had been standing completely outside [his] house," and a warrantless arrest of that person, assuming probable cause, does not violate the Fourth Amendment. United States v. Santana, 427 U.S. 38, 42 (1976); McArthur, 531 U.S. at 335. Furthermore, police are entitled to stop a person, even absent probable

cause, if there is reasonable suspicion that the detained person has committed or is about to commit a criminal offense. <u>Staten v. Tatom</u>, 465 F. App'x 353, 358-59 (5th Cir. 2012) (citing <u>Terry</u>, 392 U.S. at 24). If an arrest ensues, a warrantless search incident to the arrest is justified to protect an officer's safety. <u>Chimel</u>, 395 U.S. at 762-63 ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape."); <u>Arizona v. Gant</u>, 556 U.S. 332, 361 (2009) (two justifications for a warrantless search incident to arrest are officer safety and preservation of evidence).

In this case, the officers were looking to question Caulfield for suspected criminal activity, which justified their decision to prevent his departure when they saw him already outside of his home. His presence outside of his home left him open to their scrutiny and supported the decision to prevent his departure before questioning about suspected criminal activity. The discarded heroin fueled the legitimacy of the cautious approach exercised by the officers and the ultimate security search of the house made after Caulfield provided additional information to the officers, including that the weapon and other people were inside the house. Under these circumstances, Caulfield has not established that counsel had any reason to include this meritless argument in the motion to suppress.

Caulfield further alleges that his counsel erred in failing to move to recess the suppression hearing to obtain the identities of other New Orleans police officers present

when he was first approached outside of his home. According to Caulfield, counsel should have obtained the names of the other officers to pursue testimony from them to confirm what Sergeant Palumbo had already stated, that the officers did not want Caulfield to leave and they parked their vehicles to prevent that possibility. He also alleges that the other officers would have testified that they did not see him discard heroin.

Caulfield does not explain how counsel performed unreasonably in failing to pursue this purely speculative testimony. The testimony was wholly unnecessary, since Caulfield never denied actually discarding the heroin. As noted by the State, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).

In this case, Caulfield has neither met this burden nor clarified how these officers would have testified favorably to the defense. Caulfield has not shown deficient

performance or prejudice resulting from counsel's failure to seek a recess of the suppression hearing.

Caulfield next alleges that the affidavit used to obtain the Jefferson Parish search warrant contained misrepresentations and omissions of facts without which no probable cause existed. Caulfield suggests that the format of the statements in the warrant misleads the reader as to the timing of the events leading to the request for the search warrant.

A misstatement of fact can vitiate a search warrant affidavit only where the misrepresentations are the product of "deliberate falsehood or of reckless disregard for the truth." Franks v. Delaware, 438 U.S. 154, 171 (1978). However, where the remaining portion of the affidavit is sufficient to support a finding of probable cause, then the warrant will stand. Id. at 155-56; Illinois v. Gates, 462 U.S. 213, 238-39 (1983); Moreno v. Dretke, 450 F.3d 158, 169-70 (5th Cir. 2006).

Caulfield's characterization of the affidavit's language is strained and certainly not an accurate reflection of how the affidavit would be construed by a reviewing judicial officer or reasonable legal counsel. The affidavit contains no obvious falsities and in no way suggests that the Jefferson Parish officers were part of the initial stop or present with the New Orleans officers when they first arrived.[33] Rather, the affidavit reports the

---

[33]St. Rec. Vol. 3 of 6, Application for Search Warrant, 7/27/08.

actions of the New Orleans police officers as conveyed by Sergeant Palumbo leading up to the filing of the affidavit by the Jefferson Parish Sheriff's Office.

The content of the affidavit fails to disclose any legitimate basis for counsel to have challenged its veracity. Caulfield has not shown that counsel acted unreasonably in failing to contest the affidavit in the motion to suppress. See United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress based on faulty search warrant affidavit was not deficient performance because counsel is not required "to file meritless motions").

For all of the foregoing reasons, Caulfield has failed to establish that his counsel performed deficiently, unreasonably or prejudicially in connection with the motion to suppress and related proceedings. The state courts' denial of relief on these issues was not contrary to or an unreasonable application of Supreme Court law. Caulfield is not entitled to federal habeas corpus relief on this claim.

B.    APPELLATE COUNSEL

Caulfield argues that his appellate counsel was ineffective for not raising the foregoing errors by trial counsel on direct appeal. Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right. Evitts v. Lucey, 469 U.S. 387, 394 (1985). The Strickland standard for judging performance of counsel also applies to claims of ineffective appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000); Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1997). To prevail on a

claim that <u>appellate</u> counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. <u>Briseno v. Cockrell</u>, 274 F.3d 204, 207 (5th Cir. 2001); <u>Smith</u>, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal. <u>Green v. Johnson</u>, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing <u>Evitts</u>, 469 U.S. at 394). On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983). Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail. <u>See</u> <u>Anderson v. Quarterman</u>, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); <u>Penson v. Ohio</u>, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); <u>Kossie v. Thaler</u>, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those

that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue. Smith, 528 U.S. at 288; Jones, 463 U.S. at 754.

Having reviewed Caulfield's claims of ineffective assistance of trial counsel, and for all of the reasons discussed above, I find that this record contains no non-frivolous argument that should have been raised by appellate counsel. Caulfield has not demonstrated any deficient or prejudicial act by his trial counsel that warranted scrutiny on appeal, and any such argument by appellate counsel would have been meritless for the reasons discussed above and addressed by the state courts during post-conviction proceedings.

Appellate counsel's failure to assert baseless issues on direct appeal cannot be deemed either deficient performance or prejudicial, since there was no reasonable probability that these arguments would have prevailed on appeal. Accordingly, the denial of relief on this issue was not contrary to or an unreasonable application of Strickland. Caulfield is not entitled to federal habeas corpus relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Caulfield's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[34]

New Orleans, Louisiana, this _____11th_____ day of September, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[34]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.